**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRUCE MILLS**<br>1146 Madison Ave, Apt 1A<br>Prospect Park, PA 19076<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMERICAN AIRLINES, INC.**<br>1 Skyview Drive<br>Fort Worth, TX 76155<br><br>**Defendant.** | : | **CIVIL NO.** ______________<br><br>***JURY TRIAL DEMANDED*** |

## COMPLAINT – CIVIL ACTION

Plaintiff Bruce Mills, by and through his undersigned attorney, for his Complaint against Defendant American Airlines, Inc., alleges as follows:

## INTRODUCTION

1. Plaintiff initiates this action contending Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. by failing to provide reasonable accommodation(s) to Plaintiff as well as by discriminating against Plaintiff because of his actual and/or perceived disabilities, for his record of disability, and in retaliation for engaging in protected activity.

2. Plaintiff further contends Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. by discriminating against Plaintiff because of his race/color and by retaliating against him for engaging in protected activity.

3. Defendant's violations of the ADA and Title VII have caused Plaintiff to suffer damages as set forth herein.

## PARTIES

4. Plaintiff Bruce Mills is a citizen of the United States and Pennsylvania, who currently resides at 1146 Madison Ave Apt 1A, Prospect Park, PA 19076.

5. Upon information and belief, Defendant American Airlines, Inc. is a Delaware corporation with a principal place of business located at 1 Skyview Drive, Fort Worth, TX 76155.

6. Upon information and belief, Defendant does business in Pennsylvania including at Philadelphia International Airport, which is located at 8000 Essington Avenue, Philadelphia, PA 19153.

## JURISDICTION AND VENUE

7. Paragraphs 1 through 6 are hereby incorporated by reference as if the same were fully set forth at length herein.

8. On or about July 15, 2026, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e).

9. Plaintiff's EEOC Charge was docketed as EEOC No. 530-2026-08236 and was filed within three hundred (300) days of the unlawful employment practice(s).

10. On or about August 6, 2026, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against Defendant.

11. Plaintiff filed the instant action within the statutory time frame applicable to his claims.

12. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

13. This action is authorized and initiated pursuant to the ADA and Title VII.

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

15. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendant does business herein and the unlawful practices of which Plaintiff is complaining were committed herein.

## FACTUAL BACKGROUND

16. Paragraphs 1 through 15 are hereby incorporated by reference as if the same were fully set forth at length herein.

17. Plaintiff began his employment with Defendant at Philadelphia International Airport in or around March 2015 as a Ramp Agent.

18. On or about December 17, 2018, Defendant promoted Plaintiff to the position of IAM Maintenance Mechanic.

19. Plaintiff suffers from a chronic back condition stemming from a 2016 injury, which substantially limits one or more of his major life activities.

20. Plaintiff is Black.

21. In or December 2024, Plaintiff requested reasonable accommodations for his back condition.

22. Defendant granted Plaintiff's request for accommodation, but arbitrarily limited the duration of the accommodations to ninety work days.

23. During this ninety-day period, rather than allow Plaintiff to work his regular job with the approved accommodations, Plaintiff's manager, Edward Nespoli ("Mr. Nespoli"), required Plaintiff to perform menial tasks such as cleaning the shop.

24. Notably, Mr. Nespoli did not treat disabled white employees in this manner and permitted them to work their regular jobs with their approved accommodations.

25. Additionally, Plaintiff's coworkers, Todd Carney ("Mr. Carney") and Chris McGuire ("Mr. McGuire") subjected Plaintiff to workplace harassment because of his disability and race/color.

26. For example, Mr. Carney frequently referred to Plaintiff as a "DEI employee" and referencing Plaintiff's disability, stated, "if you can't do the job, go home, you shouldn't be here."

27. Plaintiff reported the aforementioned discrimination and harassment to Defendant in or around April 2025, but Defendant failed to take any corrective or remedial action in response to Plaintiff's complaint.

28. In or around July 2025, after the ninety-day accommodations period expired, Plaintiff requested an extension of his accommodations.

29. Defendant refused to extend Plaintiff's accommodations, with Defendant's Accommodations Team Specialist, Brenda Wieck ("Ms. Wieck"), claiming that the applicable Collective Bargaining Agreement only permitted Plaintiff to be accommodated for ninety days.

30. Ms. Wieck told Plaintiff that for Plaintiff to retain his position, he had to be one hundred percent healthy; otherwise, Plaintiff would face demotion or be placed on unpaid leave.

31. Due to Defendant's discriminatory conduct described above, Plaintiff filed a Charge of Discrimination against Defendant with the EEOC (EEOC No. 530-2025-02290) on or about July 8, 2025.

32. Defendant failed to remedy the issues identified in the July 8, 2025 EEOC Charge and thereafter subjected Plaintiff to further discrimination and retaliation on the basis of his race, color, disabilities, and protected activity.

33. Due to his chronic back condition and medication, Plaintiff advised Defendant that he was unable to drive on the service road and again requested to be relieved of this marginal job function as an accommodation.

34. Defendant refused to accommodate Plaintiff and instead attempted to force him to drive the tow truck.

35. Because of this coercion, Plaintiff had to call the Philadelphia Police on or about August 9, 2025 to confirm to Defendant that he was unable to drive the tow truck; Police Report No. 25-77-00-7892 pertains to this incident.

36. Afterwards, Defendant sent Plaintiff home without pay and did so on numerous other occasions.

37. On or about August 18, 2025, Plaintiff emailed Mr. Nespoli about Mr. Carney's and Mr. McGuire's continuing harassment due to his disability.

38. Mr. Nespoli failed to take appropriate action to stop Mr. Carney's and Mr. McGuire's harassment after receiving this report, so their harassment continued.

39. For example, on September 17, 2025, Mr. Carney approached Plaintiff in the bathroom and told Plaintiff that he was faking my injury, that he was never hurt, and that he hopes Plaintiff gets fired.

40. The following day, on or about September 18, 2025, Plaintiff emailed Defendant's Human Resources Generalist, Stacey Dickson ("Ms. Dickson") a "formal complaint about the retaliation and discrimination I have experienced related to a documented medical condition."

41. Plaintiff specifically reported Defendant's failure to accommodate him, Defendant's retaliation against him for needing accommodations, Mr. Carney's and Mr. McGuire's harassment, and Mr. Nespoli's failure to address their harassment.

42. Defendant again did not take sufficient remedial action in response to this complaint to address or stop the ongoing harassment Plaintiff was experiencing.

43. Plaintiff also made another request for accommodations that same day, on or about September 18, 2025, for similar work restrictions to the accommodations Defendant had granted previously.

44. This time, Defendant denied Plaintiff's request, of which he learned by voicemail from Ms. Wieck on or about October 31, 2025.

45. After receiving Ms. Wieck's voicemail message, Plaintiff emailed her to formally "assert my legal right to a reasonable, permanent accommodation that allows me to remain in my IAM Maintenance Mechanic GSE/Facilities position."

46. In the email, Plaintiff suggested possible accommodations of "job restructuring (e.g. reassigning the limited towing duty, which only 2 out of 8-12 mechanics must perform per shift) and the provision of assistive tools . . . . such as lifts and specific-use creepers."

47. Plaintiff also requested that Defendant continue to engage with him in the interactive process to find an appropriate accommodation.

48. Defendant did not respond to Plaintiff's email until November 13, 2025.

49. On or about November 9, 2025 Plaintiff further injured his back while working.

50. Plaintiff advised Defendant of his injury and initiated the workers' compensation process.

51. On or about November 13, 2025, Plaintiff saw the doctor for his workers' compensation claim.

52. While he was at the appointment, Ms. Wieck emailed Plaintiff to again advise that Defendant had denied his recent request for accommodation, this time in writing.

53. However, in this email, Ms. Wieck advised that Defendant was placing Plaintiff on a leave of absence for ninety days on the basis that he was unable to perform the essential functions of his job.

54. Strangely, Ms. Wieck backdated her email to October 31, 2025.

55. Plaintiff responded to Ms. Wieck's email a few hours later “to formally object to the company's illegal action today . . . of placing me on unpaid medical leave” because of the work injury he suffered four days prior and because he had a pending Charge with the EEOC.

56. Plaintiff further requested “clarification as to why the company violated Article 26 of the Collective Bargaining Agreement”, which “states that an employee with an injury on the job who cannot perform all the essential elements of their normal work will be provided Limited Duty for up to ninety (90) work days.”

57. Plaintiff also noted that this amounted to an unlawful failure to accommodate under the ADA.

58. Plaintiff emailed Ms. Wieck two more times, on November 17, 2025, and December 15, 2025.

59. In both emails, Plaintiff requested Defendant comply with its obligations under the ADA and objected to Defendant's actions that had deviated from the requirements of the ADA.

60. In the latter email, Plaintiff also emphasized that Defendant had previously provided him with the accommodations it now claimed were not feasible.

61. Defendant did not address Plaintiff concerns or engage in the interactive process, so Plaintiff remained on leave involuntarily.

62. In May 2026, Plaintiff submitted paperwork from his doctor clearing him to return to work with restrictions that were even more moderate than those previously requested.

63. Defendant again claimed it could not accommodate Plaintiff, without engaging in the interactive process.

64. To this day, Defendant refuses to enable Plaintiff to return to work by providing reasonable accommodations.

65. In contrast with Plaintiff, Defendant has not failed to accommodate Plaintiff's similarly-situated white coworkers with disabilities and has not subjected them to discrimination or harassment.

66. In light of the foregoing, it is believed and therefore averred that Defendant failed to accommodate Plaintiff, in violation of the ADA.

67. It is further believed and therefore averred that Defendant discriminated against Plaintiff and placed him on involuntary and indefinite leave because of his actual and/or perceived disabilities, requests/need for accommodation, race/color, reports of workplace discrimination, and record of disability, in violation of the ADA and Title VII.

68. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, benefits and potential benefits, and earnings and earnings potential; Plaintiff has also suffered other economic damages, mental anguish, pain and suffering, emotional distress, humiliation, and damage to reputation and career.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT ("ADA")**
**42 U.S.C. § 12101, *et seq.***
**DISCRIMINATION & RETALIATION**

69. Paragraphs 1 through 68 are hereby incorporated by reference as though the same were fully set forth at length herein.

70. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

71. Plaintiff requested and required reasonable accommodation(s) in connection with his disability.

72. Additionally, Plaintiff reported workplace disability discrimination and harassment.

73. Defendant violated the ADA by discriminating and retaliating against Plaintiff because of his actual and/or perceived disabilities, his record of impairment/disability, his requests for reasonable accommodation(s), and his reports of workplace discrimination.

74. Defendant violated the ADA by failing to accommodate Plaintiff and failing to engage in the interactive process.

75. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including but not limited to loss of employment, benefits, earnings and earnings potential as well as other economic damages, mental anguish, emotional pain and suffering, emotional distress, humiliation, damage to career, and damage to reputation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in hos favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and compensatory damages in amounts to be determined at trial;

b) Monetary compensation for the amounts expended by Plaintiff on health insurance premiums, coverage, and care;

c) Punitive and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

d) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

e) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

g) Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT II**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("Title VII")**
**42 U.S.C § 2000e, *et seq.***
**DISCRIMINATION & RETALIATION – RACE/COLOR**

76. Paragraphs 1 through 75 are hereby incorporated by reference as though the same were fully set forth at length herein.

77. Plaintiff is Black and as such is a member of a class protected under Title VII from unlawful discrimination because of race and color.

78. Plaintiff reported workplace discrimination that he experienced on the basis of his race and/or color.

79. Defendant violated Title VII by discriminating against Plaintiff's on the basis of his race and/or color and by retaliating against him for engaging in protected activity.

76. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including but not limited to loss of employment, benefits, earnings and earnings potential as well as other economic damages, mental anguish, emotional pain and suffering, emotional distress, humiliation, damage to career, and damage to reputation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and compensatory damages in amounts to be determined at trial;

b) Punitive and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances.

f) Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**JURY DEMAND**

**Plaintiff hereby demands a trial by jury as to all issues so triable.**

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

Date: October 30, 2026

By: */s/ Jake Daniel Novelli, Esq.* ___

Jake Daniel Novelli, Esq.
Michael Murphy, Esq.
1628 John F. Kennedy Blvd., Suite 2000
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
jnovelli@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com
*Counsel for Plaintiff*

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and his claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.